UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

JANE DOE,

    Plaintiff,

v.    No.

UNITED PARCEL SERVICE, INC.;    Hon.
and DERICK GRACZYK,

    Defendants.

## COMPLAINT AND JURY DEMAND

Plaintiff Jane Doe,[1] by and through her attorneys, asserts claims against Defendant United Parcel Service, Inc. ("UPS") for violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*, and violation of the Michigan Elliott-Larsen Civil Rights Act of 1976 ("ELCRA"), MCL § 37.2101 *et seq.*, and against Defendant Derick Graczyk ("Graczyk") for violation of ELCRA, intentional infliction of emotional distress, assault, and battery. Ms. Doe further states and alleges as follows:

## INTRODUCTION

1.    UPS long knew that its employee, Graczyk, was a serial sexual harasser, yet UPS took no meaningful steps to curb his predatory behavior.

2.    UPS's permissible attitude enabled Graczyk, a 50-year-old man employed as a UPS driver in the Traverse City area, to groom and sexually abuse Ms. Doe, an 18-year-old college student hired to assist Graczyk with deliveries in his UPS truck during the 2021 holiday season.

---

[1] Plaintiff is contemporaneously filing a Motion for Leave to Proceed under Pseudonym in order to protect her identity and privacy as a young sexual assault victim.

3. Graczyk, permitted by UPS to isolate Ms. Doe for 10 hours per day while they made deliveries, continuously made lewd and sexually explicit comments to and about her and sexually assaulted her on more than one occasion, including when he trapped her in the back of his UPS truck.

4. As a result of Graczyk's sexual assaults on Ms. Doe, he was charged with criminal sexual conduct, prosecuted, incarcerated, and is now identified on the Michigan Sex Offender Registry.

5. Ms. Doe seeks recovery for the injuries she has suffered as a result of Defendants' action and inaction that perpetuated a hostile work environment and permitted Graczyk to sexually harass and abuse her, and for Graczyk's intentional infliction of emotional distress, assault, battery, and violation of her civil rights.

## JURISDICTION

6. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1339, 1343, and 2401(a), and 42 U.S.C. § 2000e *et seq*.

7. This Court has supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. § 1367 because they arise from a common nucleus of operative facts with the federal claims and are so related to the federal claims as to form part of the same case or controversy under Article III of the United States Constitution.

8. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant UPS regularly conducts business in this District, Graczyk resides in and is domiciled in this

District, and all of the relevant facts giving rise to this case and damages sustained by Ms. Doe occurred in this District.

10. Ms. Doe has exhausted her administrative remedies and complied with all statutory prerequisites to her claims. Ms. Doe filed a Charge with the U.S. Equal Employment Opportunity Commission ("EEOC") dated July 8, 2022, submitted within 300 days of the workplace sexual harassment and hostile work environment she suffered. On September 28, 2023, the EEOC issued a Right to Sue Letter notifying Ms. Doe of her right to file a civil action within 90 days.

## PARTIES

11. Plaintiff Jane Doe resides in Tennessee.

12. Defendant UPS is a foreign profit company authorized to conduct business in Michigan. UPS conducts business in Grand Traverse County, Michigan.

13. Per the Michigan Sex Offender Registry, Graczyk resides in Antrim County, Michigan.

## FACTS

*UPS Knew that Graczyk Was a Serial Sexual Harasser*

14. UPS employed Graczyk for approximately 29 years, including in the Traverse City area.

15. During the time he was employed by UPS, the company knew that he repeatedly sexually harassed female employees, customers, and non-customers.

16. In just one instance, he sexually harassed a female employee at work by pushing her against a door and refusing to let her go until she kissed him.

17. A customer in the Traverse City area complained to UPS that, when Graczyk made a delivery to her office, Graczyk approached her from behind, placed his hands in her back pockets, and said "my penis is cold, do you have somewhere I can put it?"

18. Another customer complained to UPS that Graczyk followed her home from the mall where she worked.

19. A Traverse City area woman filed a complaint with UPS reporting that Graczyk made comments to her about her breasts – including "I wish my wife had boobs like you" – and had texted her asking if she was at home.

20. When customers complained about Graczyk's stalking and harassment, UPS changed his driving route. This occurred at least five or six times.

21. Each time a sexual harassment complaint was made about Graczyk in the Traverse City area, UPS circulated the company's purported "zero tolerance" sexual harassment policy and required employees to sign it. This happened frequently and each time it did, the running response in the company was "what did Graczyk do now?"

22. UPS took no meaningful action to prevent Graczyk from continuing to sexually harass female employees and customers.

23. As a result of UPS's indifference to Graczyk's sexual misconduct, female UPS employees were left with no recourse but to protect each other.

24. Every time a new female employee was hired by UPS at its Traverse City facility, other female employees would warn her about Graczyk and to not be alone with him because he would try anything to get sex.

25. A long-time UPS employee in Traverse City took it upon herself to remind management each year around the holidays that Graczyk should not have a female "helper" on

his truck. Yet that is exactly what UPS caused when it hired Ms. Doe and granted Graczyk's request that she work with him as his helper.

26. As that same long-time UPS employee later told the Grand Traverse County Prosecuting Attorney when she learned that Graczyk had sexually assaulted Ms. Doe, "UPS could have stopped this before [Ms. Doe] was born."

*UPS Subjected Ms. Doe to Graczyk's Predatory Behavior*

27. In December 2021, Ms. Doe was only 18 years old.

28. The Doe family was acquainted with Graczyk because he was a UPS driver who delivered packages to their home and Ms. Doe's father's place of work.

29. Graczyk also attended the same church as the Doe family on several occasions.

30. In late 2021, Graczyk suggested to Ms. Doe's father that Ms. Doe apply for a seasonal delivery job as a "Driver Helper" with UPS.

31. Ms. Doe's first day on the job with UPS was December 10, 2021, and she was originally assigned to driver Glen Wilson.

32. Graczyk directly intervened with UPS and changed Ms. Doe's assignment to his truck. UPS permitted this to happen despite warnings to management about prohibiting Graczyk from having a female holiday helper on his truck.

33. Graczyk was Ms. Doe's sole supervisor at UPS.

34. UPS never met with Ms. Doe prior to hiring her, and it merely provided her with a basic online video introduction to the job.

35. Prior to Ms. Doe starting her job at UPS, Graczyk provided her instructions for what to wear and what to expect at work.

36. As a Driver Helper, Ms. Doe was responsible for assisting her assigned UPS driver with organizing and delivering packages during the busy holiday season.

37. Each day, Graczyk picked up Ms. Doe in his UPS delivery truck and, after completing his assigned delivery route, returned Ms. Doe to her home.

38. Each day, Ms. Doe worked with Graczyk, alone, for approximately 10 hours.

39. UPS provided no detailed discussions to Ms. Doe regarding the company's sexual harassment policy nor any information concerning how to report violations.

40. On one occasion, Graczyk permitted Ms. Doe's sister to fill in for Ms. Doe as a Driver Helper on his UPS truck when Ms. Doe was not able to work. Ms. Doe's sister had not been hired by UPS.

41. Graczyk immediately began grooming Ms. Doe.

42. Graczyk talked to Ms. Doe about Biblical scripture, the firearm sales and training business he owned, his violent tendencies, and the brass knuckles he kept in his personal vehicle.

43. Graczyk's conversations and behavior with Ms. Doe quickly become overtly sexual.

44. Graczyk stated he felt it was his responsibility to educate Ms. Doe about sex, and that he would answer any questions she had because he was an adult.

45. Graczyk relayed to Ms. Doe in-depth conversations his wife had with his teenage daughter regarding sex and told Ms. Doe that because she was small it would be easier for her to get pregnant and would need to use a condom during sex.

46. Graczyk at times grabbed Ms. Doe's hand and took her into the back of the delivery truck, where he played music and made Ms. Doe slow dance with him. He held her very tightly with his hands on her back.

47. Other times Graczyk put his arm around Ms. Doe's arm as they walked up to a house to deliver a package, and then held her hand on the way back to the delivery truck.

48. Several times, Graczyk took off Ms. Doe's shoes and socks and massaged her feet.

49. The first time Graczyk massaged Ms. Doe's feet he told her, if they were dating, he would have massaged up her legs.

*Graczyk Sexually Assaulted Ms. Doe on December 29, 2021*

50. On December 29, 2021, Graczyk talked to Ms. Doe about causing a woman to orgasm by rubbing her groin.

51. Right after that, Graczyk and Ms. Doe made a delivery stop.

52. When Ms. Doe returned to the delivery truck, Graczyk asked her to go to the back of the truck with him.

53. When she entered the back of the truck, Graczyk immediately shut the door and positioned himself between Ms. Doe and the closed back door.

54. Ms. Doe was scared and unsure of what was going to happen.

55. Graczyk took Ms. Doe's left hand, removed her glove, and placed her hand on his erect penis, over his clothes.

56. When Ms. Doe told Graczyk that she was uncomfortable, he turned her around, pulled up her coat, wrapped his arms around her waist, and rubbed her vaginal area over her clothes.

57. Graczyk whispered in Ms. Doe's ear that "this is something a guy might try to do" to her in the future.

58. Ms. Doe again stated she was uncomfortable.

59. Graczyk stopped, turned her around, said "sorry," and hugged her.

60. Ms. Doe felt repulsed and violated by what Graczyk had done to her.

61. As they continued their route that day, Ms. Doe sat silently and stared straight ahead in the truck.

62. Graczyk persisted in talking to Ms. Doe about sex.

63. He described things he found appealing in women, such as staring at their breasts, and even told Ms. Doe that he often stared at her mother's breasts.

64. Graczyk told Ms. Doe he was a "boobs and leg guy" and that she had "nice legs and feet."

65. He also discussed affairs he had while married, described the sex he had with his girlfriends, and talked about oral sex.

66. Graczyk asked Ms. Doe if she wanted him to give her an orgasm without having sex with her. Ms. Doe responded "no."

67. At the end of their workday, Graczyk told Ms. Doe it was important for him to maintain a good reputation with her parents and that everything said or done that day should "stay on the truck."

*Graczyk Sexually Assaulted Ms. Doe a Second Time*

68. On December 30, 2021, Ms. Doe again worked with Graczyk, and he continued to sexually harass her.

69. Graczyk described to Ms. Doe slang terms for male and female genitalia, comparing women's vaginas to "tuna fish tacos."

70. At a lunch break in the truck, Graczyk began massaging Ms. Doe's feet.

71. This time he massaged up Ms. Doe's thighs toward her groin.

72. When Ms. Doe expressed her discomfort, Graczyk moved his hands away from Ms. Doe's groin and groped her hips and buttocks.

73. Graczyk asked Ms. Doe if she was aroused and, when she said "no," he moved his hands back down to her feet, massaged her legs back up to her groin, and told her to "relax."

74. Ms. Doe told Graczyk that she did not like what he was doing.

75. Graczyk continued to run his hands up the back of her thighs and slapped her buttocks.

76. When Ms. Doe expressed discomfort for a third time, Graczyk stopped massaging her, kissed her cheek, hugged her, and whispered in her ear that he "greatly enjoyed that" and it was "not something he does to his wife."

77. Ms. Doe feared what Graczyk might do next based on his earlier talk about guns, weapons, and violence. Ms. Doe knew that Graczyk could be dangerous.

78. Later that day, Graczyk said to Ms. Doe, "since we've crossed a few lines, what kind of panties do you wear?"

79. Ms. Doe did not respond, but Graczyk continued asking her the same question and began listing different types of panties.

80. When Graczyk dropped Ms. Doe off at her house that night, he again admonished her that everything that had happened that day should "stay on the truck." Graczyk warned Ms. Doe that he could either be her "greatest ally" or "worst enemy." Ms. Doe understood that as a threat that she should stay quiet about what he had done, and Graczyk made her scared to speak out.

81. Ms. Doe felt extremely embarrassed and upset by what Graczyk had done and could barely sleep that night due to the anxiety it caused her.

9

82. Ms. Doe did not consent to Graczyk's sexual comments and acts, which were all unwelcome.

83. Graczyk took advantage of Ms. Doe's young age, inexperience, and vulnerability.

84. Ms. Doe summoned the courage to tell her parents what had happened.

85. Ms. Doe wanted to prevent Graczyk from similarly harming another person.

86. On December 31, 2022, Ms. Doe and her parents reported Graczyk to law enforcement.

87. UPS, at long last, fired Graczyk.

88. Graczyk was charged with two counts of felony Criminal Sexual Conduct in the Fourth Degree involving force or coercion, in violation of MCL 750.520e(1)(b).

89. Graczyk pleaded guilty to two counts of Attempted Criminal Sexual Conduct in the Fourth Degree and was sentenced to six months in jail and 24 months of probation. He is now identified on the Michigan Sex Offender Registry.

90. Ms. Doe has suffered extreme distress, anxiety, humiliation, embarrassment, fear, degradation, abuse, distrust of others, and other psychological and emotional injuries due to Defendants' wrongdoing.

## **CLAIMS FOR RELIEF**

### **COUNT I**
### **Violation of Title VII**
### **Sexual Harassment and Hostile Work Environment**
### **(against Defendant UPS)**

91. Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully stated herein.

92. Defendant UPS is an employer with at least 15 employees and is prohibited by Title VII from discriminating against its employees on the basis of sex.

93. Ms. Doe was an employee of UPS for Title VII purposes.

94. Ms. Doe, as a woman, is a member of a protected class.

95. Ms. Doe was subjected to unwelcome harassment.

96. The harassment Ms. Doe suffered was based on her sex.

97. The sexual harassment Ms. Doe suffered created a hostile work environment for her.

98. UPS is vicariously and strictly liable for the sexual harassment perpetrated against Ms. Doe.

99. Based on the totality of the circumstances, the sexual harassment Ms. Doe suffered was severe or pervasive, altered the conditions of her employment, and created an abusive working environment.

100. Graczyk, who was 32 years older than Ms. Doe, isolated her, made lewd and sexually explicit comments to and about her, and physically sexually assaulted her while working with her and acting as her supervisor.

101. Graczyk's sexual misconduct was subjectively and objectively hostile and abusive.

102. Ms. Doe's decision to report Graczyk to law enforcement indicates that she subjectively found Graczyk's conduct hostile, and his criminal conviction establishes that his conduct was likewise objectively hostile and abusive.

103. Ms. Doe did not welcome or consent to any of Graczyk's sexual comments, remarks, questions, or physical assaults.

104. Graczyk qualified as a "supervisor" for Title VII purposes because he was integrally involved in procuring Ms. Doe her job at UPS, had exclusive supervision over her,

controlled her work environment and daily assignments, and had the power to make employment decisions concerning Ms. Doe that would have had direct economic consequences for her. Moreover, UPS depended on his reviews, evaluations, and reports concerning Ms. Doe. Indeed, he was the sole source of information pertaining to Ms. Doe's work performance at UPS.

105. UPS knew that Graczyk was a serial sexual harasser prior to employing Ms. Doe, yet UPS placed her, alone and supervised, with Graczyk in his delivery truck for extended periods of the day, upon Graczyk's request.

106. UPS failed to exercise reasonable care to prevent and correct Graczyk's harassing behavior against female employees and customers.

107. UPS failed to exercise reasonable care to prevent Graczyk's harassment against Ms. Doe.

108. UPS knew or should have known about Graczyk's sexual harassment and was negligent in failing to prevent him from continuing to harass UPS employees, including Ms. Doe.

109. UPS failed to meaningfully respond to prior complaints made about Graczyk's sexual harassment and displayed an attitude of permissiveness that was not reasonably calculated to end Graczyk's pattern of sexual harassment.

110. UPS's failures to take steps to prevent Graczyk's sexual harassment demonstrated indifference and unreasonableness in light of the facts.

111. UPS made no effort to supervise Graczyk's work with Ms. Doe, educate her on UPS's sexual harassment policy and how to report violations, or otherwise protect her from a known sexual harasser.

112. UPS placed Ms. Doe in a situation it knew or should have known would result in Graczyk sexually harassing her.

113. UPS acted with malice or reckless indifference toward Ms. Doe's federally protected rights under Title VII.

114. Graczyk worked in a managerial capacity with respect to Ms. Doe and was acting within the scope of his employment when he sexually harassed her in his UPS truck, while on the job.

115. UPS did not engage in good faith efforts to comply with Title VII as it pertains to Graczyk's sexual harassment of UPS employees and customers, including but not limited to Ms. Doe.

116. UPS's action and inaction were the direct and proximate cause of the harassment that Ms. Doe suffered and the injuries she sustained for which she is entitled to be compensated, including but not limited to past, present, and future physical and psychological pain, suffering, and impairment; embarrassment, humiliation, outrage, indignity, and mortification; and denial of social pleasure and enjoyments.

117. Ms. Doe is also entitled to punitive damages against UPS on this Count.

**COUNT II**
**Violation of ELCRA**
**Sexual Harassment and Hostile Work Environment**
**(against Defendant UPS)**

118. Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully stated herein.

119. ELCRA recognizes that freedom from employment discrimination on the basis of sex is a civil right.

120. The Supreme Court of Michigan further explains:

> Sexual harassment should be explicitly defined and prohibited because it is a demeaning, degrading, and coercive activity directed at persons on the basis of their sex, the continuation of which is often contingent on the harasser's economic control over the person being harassed. It should be outlawed because it violates basic human rights of privacy, freedom, sexual integrity, and personal security.

*Radtke v. Everett*, 442 Mich. 368, 381 (1993) (quoting House Legislative Second Analysis, HB 4407, Aug. 15, 1980).

121. ELCRA broadly defines prohibited sexual discrimination, which includes sexual harassment and a hostile work environment.

122. Sexual harassment includes unwelcome sexual advances and other verbal or physical conduct or communication of a sexual nature.

123. Ms. Doe, as a UPS employee, belonged to a protected group.

124. Ms. Doe was a UPS employee who was the object of her supervisor's unwelcome sexual advances and harassment, including sexual assault, physical conduct, and communications of a sexual nature.

125. Graczyk's conduct was sexually motivated when he made lewd and sexually explicit comments to and about Ms. Doe and physically assaulted her by touching intimate parts of her body and placing her hand on his penis.

126. But for the fact of Ms. Doe's sex, she would not have been the object of Graczyk's harassment.

127. Ms. Doe did not solicit or incite Graczyk's sexual misconduct, and she regarded his misconduct as undesirable and offensive.

128. Graczyk's acts of sexual misconduct against Ms. Doe, viewed by any reasonable person based on the totality of the circumstances, created an intimidating, hostile, and offensive employment environment for Ms. Doe.

129. UPS knew or should have known that Graczyk was a serial sexual harasser.

130. UPS was aware of a substantial probability that Graczyk would sexually harass Ms. Doe or was, in fact, sexually assaulting Ms. Doe.

131. Graczyk's serial sexual harassment was a recurring issue at UPS, UPS knew that Graczyk would likely continue sexually harassing female employees, UPS management was specifically warned to not permit women to work as Graczyk's helper during the holiday season, and UPS failed to address, remediate, or correct this problem when, among other things, it employed Ms. Doe and placed her with Graczyk in his UPS truck.

132. UPS's action and inaction were the direct and proximate cause of the harassment that Ms. Doe suffered and the injuries she sustained for which she is entitled to be compensated, including but not limited to past, present, and future physical and psychological pain, suffering, and impairment; embarrassment, humiliation, outrage, indignity, and mortification; and denial of social pleasure and enjoyments.

## COUNT III
### Violation of ELCRA
### (against Defendant Graczyk)

133. Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully stated herein.

134. UPS delegated supervisory power and authority over Ms. Doe to Graczyk, and he was an "agent" of UPS under ELCRA.

135. ELCRA broadly defines prohibited sexual discrimination, which includes sexual harassment and a hostile work environment.

136. Sexual harassment includes unwelcome sexual advances and other verbal or physical conduct or communication of a sexual nature.

137. Ms. Doe, as a UPS employee, belonged to a protected group.

138. Ms. Doe was a UPS employee who was the object of Graczyk's unwelcome sexual advances and harassment, including sexual assault, physical conduct, and communications of a sexual nature.

139. Graczyk's conduct was sexually motivated when he made lewd and sexually explicit comments to and about her and physically assaulted her by touching intimate parts of her body and placing her hand on his penis.

140. But for the fact of Ms. Doe's sex, she would not have been the object of Graczyk's harassment.

141. Ms. Doe did not solicit or incite Graczyk's sexual misconduct, and she regarded his misconduct as undesirable and offensive.

142. Graczyk's acts of sexual misconduct against Ms. Doe, viewed by any reasonable person based on the totality of the circumstances, created an intimidating, hostile, and offensive employment environment for Ms. Doe.

143. Graczyk's acts were the direct and proximate cause of the harassment that Ms. Doe suffered and the injuries she sustained for which she is entitled to be compensated, including but not limited to past, present, and future physical and psychological pain, suffering, and impairment; embarrassment, humiliation, outrage, indignity, and mortification; and denial of social pleasure and enjoyments.

## COUNT IV
### Intentional Infliction of Emotional Distress
### (against Defendant Graczyk)

144. Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully stated herein.

145. Graczyk's grooming, sexual harassment, and sexual assault of Ms. Doe was intentional, extreme, and outrageous.

146. Graczyk egregiously abused his position of actual and apparent authority over Ms. Doe when he, as her much older work supervisor, isolated, groomed, threatened, sexually harassed, and sexually assaulted her, including but not limited to when he trapped her in the back of his truck, placed her hand on his penis, and rubbed her vagina.

147. Graczyk's grooming, sexual harassment, and sexual assault of Ms. Doe goes beyond all possible bounds of decency and is atrocious and utterly intolerable in any civilized community.

148. Graczyk's extreme and outrageous conduct intentionally or recklessly caused Ms. Doe to suffer extreme emotional distress.

149. As a result of Graczyk's extreme and outrageous conduct, Ms. Doe suffered and continues to suffer severe emotional distress.

150. Graczyk acted maliciously, willfully, egregiously, and wantonly when he groomed, sexually harassed, and sexually assaulted Ms. Doe.

151. Graczyk's grooming, sexual harassment, and sexual assault of Ms. Doe caused her to suffer humiliation, outrage, and indignity, which are natural and proximate in view of the nature of Graczyk's misconduct.

152. As a direct and proximate result of Graczyk's intentional, extreme, and outrageous conduct, Ms. Doe sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to past, present, and future physical and psychological pain, suffering, and impairment; embarrassment, humiliation, outrage, indignity, and mortification; and denial of social pleasure and enjoyments.

153. Ms. Doe is also entitled to an award of exemplary damages on this Count.

### COUNT V
### Assault and Battery
### (against Defendant Graczyk)

154. Plaintiff incorporates all preceding paragraphs into this Count by reference as though fully stated herein.

155. Graczyk engaged in willful, harmful, and offensive touching of Ms. Doe when he placed her hand on his penis, rubbed her vaginal area, touched her legs and groin, groped her hips and buttocks, slapped her buttocks, and hugged and kissed her.

156. Graczyk's harmful and offensive touching, threats, and discussion of weapons and violence caused Ms. Doe to fear the imminence of his impending and continued sexual assault, unwanted and offensive touching, and other violence.

157. Graczyk's conduct was malicious and/or sufficiently willful and wanton as to demonstrate a reckless disregard for Ms. Doe's rights, and his voluntary acts inspired Ms. Doe's feelings of humiliation, outrage, and indignity.

158. As a direct and proximate result of Graczyk's intentional, extreme, and outrageous conduct, Ms. Doe sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to past, present, and future physical and

psychological pain, suffering, and impairment; embarrassment, humiliation, outrage, indignity, and mortification; and denial of social pleasure and enjoyments.

159. Ms. Doe is also entitled to an award of exemplary damages on this Count.

## **PRAYER FOR RELIEF**

Plaintiff prays the Court for judgment in favor of her and against Defendants, awarding Plaintiff compensatory damages in an amount to be established at trial, punitive damages, exemplary damages, attorneys' fees and costs, legal interest, and such other relief as the Court may deem just and proper under the circumstances.

## **JURY DEMAND**

Plaintiff respectfully demands a trial by a jury.

Date: December 21, 2023

/s/ Monica H. Beck
Monica H. Beck (P78555)
**THE FIERBERG NATIONAL LAW GROUP, PLLC**
201 East 17th Street, Suite A
Traverse City, MI 49684
Tel. (231) 933-0180
Fax (231) 252-8100
mbeck@tfnlgroup.com